**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Jason P.,[1]

Plaintiff,

v.

Frank Bisignano,
*Commissioner of Social Security Administration*,

Defendant.

Case No. 26-cv-1454 (DJF)

**ORDER**

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Jason P. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying his application for disability insurance benefits under Title II of the Social Security Act ("DIB") ("Decision"). Plaintiff challenges the Administrative Law Judge's ("ALJ") application of the medical-vocational guidelines and his conclusion that Plaintiff is able to perform other jobs existing in significant numbers in the national economy. He asks the Court to vacate and reverse the Decision, or in the alternative, remand this matter to the Commissioner for a new hearing. (ECF Nos. 1, 10.) The Commissioner asks that the Decision be affirmed in its entirety. (ECF No. 17.) The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and this matter is before the Court on the parties' briefs. For the reasons given below, the Court affirms the Commissioner's Decision.

[1] This District has adopted a policy of using only the first name and last initial of any non-governmental parties in orders in Social Security matters.

## BACKGROUND

### I. Regulatory Background

An individual is considered disabled for purposes of DIB if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, an individual is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4). At step one, the claimant must establish that he is not engaged in any "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). The claimant must establish at step two that he has a severe, medically determinable impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the Commissioner must find the claimant is disabled if the claimant has satisfied the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing"). 20 C.F.R. § 404.1520(a)(4)(iii).[2] If

[2] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" affected. *See* 20 C.F.R. Part 404, Subpart P, App'x. 1.

the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four. The claimant then bears the burden of establishing his residual functional capacity ("RFC") and proving that he cannot perform any past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). If the claimant proves he is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

"If an applicant's impairments are exertional, (affecting the ability to perform physical labor), the Commissioner may carry this burden by referring to the medical-vocational guidelines … which are fact-based generalizations about the availability of jobs for people of varying ages, educational backgrounds, and previous work experience, with differing degrees of exertional impairment." *Pearsall v. Massanari,* 274 F.3d 1211, 1219 (8th Cir. 2001) (quoting *Gray v. Apfel,* 192 F.3d 799, 802 (8th Cir.1999)). However, vocational expert testimony is required at step five if "the claimant has nonexertional impairments, which make use of the medical-vocational guidelines … inappropriate." *Id.* (quoting *Banks v. Massanari,* 258 F.3d 820, 827 (8th Cir. 2001)). If the Commissioner finds the claimant can perform other work existing in a significant number of jobs in the national economy—whether based on the medical-vocational guidelines or vocational expert testimony—the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v).

## II. Relevant Procedural History

On November 13, 2020, Plaintiff protectively filed an application for DIB alleging disability beginning February 29, 2020. (*See* Soc. Sec. Admin. R. (hereinafter "R.") 234-243.)

Plaintiff was a 51-year-old man on December 31, 2021, his date last insured. (R. 695, 708.) The Commissioner denied his claims initially on June 8, 2021, and upon reconsideration on July 25, 2021. (R. 133, 146.) An ALJ held a hearing on Plaintiff's claim on December 8, 2021. (R. 54-57.) An attorney represented Plaintiff during the hearing, and Plaintiff and a vocational expert ("VE") testified. (R. 54.) At the hearing, Plaintiff amended his alleged onset date of disability from February 29, 2020 to April 1, 2020. (R. 62-63.) The ALJ issued a decision on December 28, 2021 finding Plaintiff was not disabled. (R. 31-53, 807-822.) Plaintiff appealed to the Appeals Council, but he was unsuccessful. (R. 21-27, 827-833.)

Plaintiff filed suit in this District on April 3, 2024. *Jason P. v. O'Malley*, No. 24-cv-1139 (ECW) (D. Minn.). Before the court could address Plaintiff's claim on the merits, however, the parties filed a joint stipulation to remand the case to the Commissioner for a supplemental hearing and further administrative action pursuant to sentence 4 of 42 U.S.C. § 405(g). *Id.* (ECF No. 10). The court approved the stipulation and filed a remand order on June 28, 2024. *Id.* (ECF Nos. 12, 13).

On remand from the District Court, the Appeals Council vacated the ALJ's December 28, 2021 decision, finding the ALJ's evaluation of whether Plaintiff could perform other work existing in significant numbers in the national economy was inadequate. (R. 862.) The Appeals Council found the ALJ erred in concluding the job of "Cashier II" was a position that a person with Plaintiff's limitations could perform, noting that this position has a General Educational Development ("GED") level of 3 in the Dictionary of Occupational Titles ("DOT"). (*Id.*) The hypothetical presented to the VE based on Plaintiff's RFC included a limitation to "simple, routine repetitive tasks." (*Id.*) In contrast, a GED level of 3 requires the ability "to apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form and deal

with problems involving several concrete variables in or from standardized situations." (*Id.*) The Appeals Council thus concluded there were unexplained conflicts between the VE's testimony and the DOT, and instructed the ALJ on remand to obtain supplemental VE testimony clarifying the effect of the assessed limitations on Plaintiff's occupational base. (*Id.* at 862-63.)

A different ALJ conducted the hearing on remand on July 21, 2025. (R. 778.) An attorney represented Plaintiff during the hearing, and Plaintiff and a VE testified. (R. 778-803.) At that hearing, Plaintiff amended his alleged disability onset date from February 29, 2020 to March 5, 2020. (R. 781, 1083.) After the hearing, the ALJ considered whether Plaintiff was disabled from March 5, 2020, his alleged disability onset date, through December 31, 2021, his date last insured. (R. 710.)

The ALJ determined at step one of the sequential analysis that Plaintiff had not engaged in substantial gainful activity during the relevant period. (R. 695.) At step two, the ALJ found Plaintiff had the following severe impairments: cervical degenerative disc disease status post C5-6 anterior cervical discectomy and fusion in 2005, C4-5 interbody fusion with device placement in August 2019; obesity; major depressive disorder; and post-traumatic stress disorder ("PTSD"). (R. 696.) At step three, the ALJ concluded that none of Plaintiff's impairments individually or collectively met or medically equaled any impairment in the Listing. (R. 696-699.)

The ALJ then determined Plaintiff's RFC. He stated:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: occasionally climb ramps and stairs; never climb ladders, ropes and scaffolds; occasionally balance, stoop, kneel, crouch and crawl; never reach overhead with the bilateral upper extremities; frequently reach in all other directions with the bilateral upper extremities; frequently handle and finger with the dominant right upper extremity; occasionally handle and finger with the non-dominant left upper extremity; can never work at high exposed places; limited to simple, routine repetitive tasks at a nonproduction

> pace in a low stress environment, which is defined as having only occasional changes in work setting and requiring no more than occasional decision-making.

(R. 699.)

At step five, the VE testified that a hypothetical person with Plaintiff's RFC limitations could perform representative occupations such as: School Bus Monitor (DOT No. 372.667-042, Light/Unskilled, SVP-2, of which there are approximately 22,800 jobs in the national economy); Usher (DOT No. 344.677-014, Light/Unskilled, SVP-2, of which there are approximately 5,000 jobs in the national economy); and Children's Attendant (DOT No. 349.677-018, Light/Unskilled, SVP-2, of which there are approximately 4,000 jobs in the national economy). (R. 709, 795-800.)

Based on the VE's testimony, and considering the medical-vocational guidelines, as well Plaintiff's age, education, work experience and RFC, the ALJ found there were jobs existing in significant numbers in the national economy that Plaintiff could perform. (R. 710.) The ALJ thus issued a Decision on August 11, 2025 concluding Plaintiff was not disabled during the relevant period. (R. 689-718.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 682-688), and this lawsuit followed.

**DISCUSSION**

**I. Standard of Review**

The Court's review of the Commissioner's Decision is limited to determining whether the Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quotation omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This "threshold … is not high." *Id.* But a court determining whether evidence is substantial must also consider whatever is in the record that

fairly detracts from its weight. *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999); *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Remand is warranted, however, when the ALJ's opinion contains insufficient factual findings that "considered in light of the record as a whole, are insufficient to permit [the] Court to conclude that substantial evidence supports the Commissioner's decision." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review). At a minimum, the ALJ must build a logical bridge between the evidence and the RFC he creates. He does so by "includ[ing] a narrative discussion describing how the evidence supports each conclusion." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7. "[T]he [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*; *see also Lee R. v. Kijakazi*, No. 20-cv-1989 (BRT), 2022 WL 673259, at *4 (D. Minn. Mar. 7, 2022) (finding ALJ failed to create a "logical bridge" between the evidence and his conclusions); *Weber v. Colvin*, No. 16-cv-332 (JNE/TNL), 2017 WL 477099, at *26 (D. Minn. Jan. 26, 2019) (same).

## II. Analysis

Plaintiff's appeal challenges the ALJ's findings and conclusions at step five of the sequential analysis.[3] (*See* ECF No. 10.) Plaintiff contends the ALJ erred by: (1.) erroneously finding him able to perform jobs with "light" work requirements based on a misapplication of the medical-vocational guidelines (*see id.* at 13-16); (2.) improperly finding that "School Bus Monitor" was a job Plaintiff was able to perform (*see id*. at 17-19); and (3.) crediting an unreliable estimate from the VE regarding the number of School Bus Monitor jobs available in the national economy (*id.* at 19-21).

### A. The Medical-Vocational Guidelines

Plaintiff argues the ALJ should have applied the medical-vocational guidelines ("Grids") for sedentary work as the framework for his step-five analysis. The Grids "are a set of charts listing certain vocational profiles that warrant a finding of disability or non-disability." *McCoy v. Astrue*, 648 F.3d 605, 613 (8th Cir. 2011) (citing 20 C.F.R. Part 404, Subpart P, App'x. 2.) They are based on a claimant's capacity for physical exertion as defined under the regulations, *see* 20 CFR. § 404.1567 (defining sedentary, light, medium, heavy, and very heavy exertional levels based on the amount of weight a claimant can lift and carry), taking into account the claimant's age, education, and previous work experience. *See* 20 C.F.R. Part 404, Subpart P, App'x 2.

Plaintiff does not contest the ALJ's RFC determination at step four that he was able to perform "light" work during the relevant period based on his capacity to lift and carry, but he argues that because his RFC included additional exceptions and restrictions, including limitations

[3] Plaintiff does not challenge the ALJ's findings at steps one through four of the sequential analysis (*see* ECF No. 10), and therefore, the Court addresses these findings only as necessary to evaluate Plaintiff's step-five claims.

on overhead reaching and use of his left arm, he was incapable of performing most light-duty jobs. (*See* R. 699, finding Plaintiff had the RFC "to perform light work … except …never reach overhead with the bilateral upper extremities … occasionally handle and finger with the non-dominant left upper extremity ….".) Considering these additional limitations, Plaintiff contends the ALJ should have applied the "sedentary" Grid category instead of the "light" Grid category at step five. (*See* ECF No. 10 at 13-16.)

The crux of Plaintiff's argument is that the additional limitations assessed in his RFC substantially eroded his occupational base. (*Id*. at 13.) He contends that in this circumstance, the ALJ should have applied the adjudicative guidance in Social Security Ruling 83-12, which states that when a claimant's exertional limitations place him between two categories of the Grids, the ALJ should apply the lower exertional category if his exertional capacity is significantly reduced by the additional limitations:

> If the exertional level falls between two rules which direct opposite conclusions, i.e., "Not disabled" at the higher exertional level and "Disabled" at the lower exertional level … An exertional capacity that is only slightly reduced in terms of the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of "Not disabled." … On the other hand, if the exertional capacity is significantly reduced in terms of the regularity (sic) definition, it could indicate little more than the occupational base for the lower rule and could justify finding of "Disabled."

SSR 83-12. According to Plaintiff, applying this analysis would have placed him in the "sedentary" range because the ALJ's assessment of his RFC did not merely limit him to "light" work, but significantly reduced the unskilled light occupational base by adding restrictions against overhead reaching and handling and fingering with the left upper extremity. (*See* ECF No. 18 at 4.) Plaintiff thus concludes that the ALJ erred by failing to use the sedentary Grid as a framework to determine whether he was disabled. (*Id.*) Under the "sedentary" Grid rules, a

person with Plaintiff's age, education, and work experience would be deemed "disabled." *See* 20 C.F.R. Part 404, Subpart P, App'x 2, 201.12.

Plaintiff's argument that the ALJ misapplied the Grid rules is unpersuasive. In determining whether Plaintiff could make a successful adjustment to other work, the ALJ carefully considered the Grids, as well as Plaintiff's RFC, age, education, and work experience. (*See* R. 708-709.) Plaintiff was 51 years old on his date last insured (*see* R. 695, 708), which placed him in the "closely approaching advanced age" category of the Grids. 20 C.F.R. § 1563(d). He had a high-school education (*see* R. 1101) and previous unskilled work experience as a warehouse worker (*id.*). Based on these facts, and the ALJ's uncontested determination that Plaintiff had the RFC to perform light work, the ALJ properly determined that medical-vocational Rule 202.13 most closely matched his conditions, which would direct a finding of "not disabled" (R. 703). *See* 20 C.F.R. Part 404, Subpart P, App'x 2, 202.13.

If the ALJ had stopped there, the resulting "not disabled" determination would lack sufficient foundation. However, the ALJ went on to consider Plaintiff's additional exertional and non-exertional limitations, finding that Plaintiff's "ability to perform all or substantially all of the requirements of this [light] level of work was impeded by [those] additional limitations." (R. 703; *see also* R. 699, including both non-exertional limitations and exertional limitations that are not addressed by the Grids in Plaintiff's RFC.) Having determined that the Grids did not fully address all of Plaintiff's limitations, the ALJ called a VE to determine the extent to which Plaintiff's additional exertional and non-exertional limitations eroded the unskilled light occupational base. (R. 703.) The ALJ posed a hypothetical to the VE that included all the limitations in Plaintiff's RFC—including the limits on overhead reaching and use of his upper left extremity—and asked whether jobs existed in the national economy for an individual with

that RFC and Plaintiff's age, education, work experience. (*Id.*; *see also* R. 796.) The VE plainly considered the impact of Plaintiff's additional limitations on the erosion of Plaintiff's occupational base and nonetheless determined that there were representative jobs he could perform. (*See* R. 796-800.) Plaintiff's assertion that the ALJ failed to properly consider the extent to which his additional limitations eroded the light occupational base (*see* ECF No. 18 at 3) is thus without merit. *C.f. Jones ex rel. Morris v. Barnhart,* 315 F.3d 974, 979-80 (8th Cir. 2003) (rejecting claim that ALJ relied on improper Grid rule when ALJ instead recognized claimant could not perform a full range of work and proceeded to consider whether there were jobs available to him in light of his limitations).

Moreover, the ALJ was not required to reject the VE's conclusions in favor of the "sedentary" Grid under the "between two grids" rule on which Plaintiff relies. Plaintiff's argument ignores the equivocal, permissive language used in that rule. *See* SSR 83-12 ("If the exertional capacity is significantly reduced in terms of the regularity (sic) definition, it *could* indicate little more than the occupational base for the lower rule and *could* justify finding of "Disabled.") (emphasis added). Plaintiff also ignores the rule's clear mandate that an ALJ must solicit and rely on the advice of a vocational expert whenever the extent of the erosion of the claimant's occupational base is unclear, as it was here. *Id.* ("Where the extent of erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource.") Because Plaintiff's RFC included multiple exertional and non-exertional restrictions that the Grid rules do not address, such that the step-five analysis required "difficult judgments", *see* SSR 83-12, the ALJ was not only permitted to consider the VE's testimony; he was required to do so. *See, e.g., Pearsall*, 274 F.3d at 1219 (holding vocational expert testimony is required, and use of the Grids is "inappropriate", if a claimant has non-exertional limitations); *see also Kirby v. Soc.*

*Sec. Admin., Comm'r*, 819 F. App'x 828, 835 (11th Cir. 2020) ("[A]n ALJ may not exclusively rely on the grids when a claimant is unable to perform a full range of work at a given residual functional level or has non-exertional impairments that significantly limit basic work skills. … When such limitations exist [an] ALJ must consult a vocational expert to determine whether the claimant can adjust to other work.) (internal citations omitted); *Juardo v. Commissioner*, No. CIV S-11-1489 CMK, 2012 WL 1552618, at *5 (E.D. Cal. May 1, 2012) ("[T]he ALJ may apply [the grids] in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations.") (quoting *Jones v. Heckler,* 760 F.2d 993, 998 (9th Cir.1985). Therefore, the ALJ's reliance on the VE's testimony in lieu of the Grids was not erroneous.

**B. School Bus Monitor Position**

Plaintiff further contends the ALJ erred in adopting the VE's conclusion that he could perform the School Bus Monitor occupation, because the limitations assessed in his RFC would preclude him from performing the required job duties as described in the DOT and O*NET, an online compilation of vocational information. (ECF No. 10 at 17-19.) Plaintiff also asserts that the number of School Bus Monitor jobs consistent with his RFC limitations is lower than the VE's estimate, resulting in an insignificant number of jobs. (*Id.* at 19.) Defendant responds that "it is well settled that the ALJ meets her step five burden of production by relying on vocational expert testimony." (ECF No. 17 at 12, citing *Milam v. Colvin*, 794 F.3d 978, 985-86 (8th Cir. 2015).)

Previous Social Security Administration policy provided that, before an ALJ could rely on a VE's testimony, he must:

- Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the *Dictionary of*

*Occupational Titles* (DOT), including its companion publication, the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (SCO), published by the Department of Labor, and

- Explain in the determination or decision how any conflict that has been identified was resolved.

SSR 00-4p. The Administration rescinded that policy effective January 6, 2025 and replaced it with another one. (*See* SSR 00-4P; SSR 24-3p.) Because the Administration rescinded the policy months prior to the July 21, 2025 hearing before the ALJ, the new policy applies in this case.

Under the new policy, ALJs are no longer required to identify and resolve conflicts between a VE's testimony and the DOT. SSR 24-3p. Instead, VEs are expected to: "identify the sources of the data they use"; "explain their general approach to estimating job numbers"; explain any differences between the data sources used and the definitions of "exertion, education or skill" in the regulations; and "identify and explain if they cite an occupation that is performed in a different way than identified in the source of data they used" if instructed to do so. *Id.* An ALJ is then required to "weigh the VE or VS evidence in the context of the overall record and determine whether it can support a conclusion at step four or step five," and "develop the record with sufficient evidence to make a supported finding" if the VE does not provide the expected information and explanation.

As SSR 24-3p explains, the Administration "continue[s] to recognize the DOT as a valid and reliable source of occupational information" but now "acknowledge[s] that the DOT is not the only reliable source of occupational information." *Id.* In addition, the policy notes that "adjudicative experience … has shown that requiring … adjudicators, VSs, and VEs to identify and explain conflicts with the DOT is time consuming" and "[a]t the hearing level, the

requirements of SSR 04-p have led to unnecessary remands to resolve apparent conflicts that were not identified at the hearing when the VE testified." *Id.* The policy further explains:

> Because VEs and VSs are impartial and qualified professionals whom we consult because of their expertise, a more detailed inquiry into the sources of data or approaches used is not usually required. At the hearing level, when the claimant is represented, we expect the representative to raise any relevant questions or challenges about the VE's testimony at the time of the hearing and to assist in developing the record through appropriate questions to the VE.
>
> *Id.*

Here, the VE testified that he based his conclusions regarding representative jobs on the DOT and the Selected Characteristics of Occupations ("SCO") defined in the DOT. (R. 800.) The DOT describes a "School Bus Monitor" as someone who:

> Monitors conduct of students on school bus to maintain discipline and safety: Directs loading of students on bus to prevent congestion and unsafe conditions. Rides school bus to prevent altercations between students and damage to bus. Participates in school bus safety drills. May disembark from school bus at railroad crossings and clear bus across tracks.
>
> DOT 372.667-042.[4]

Plaintiff argues this job description is inconsistent with his RFP, insofar as the ALJ limited him to "simple, routine repetitive tasks at a nonproduction pace in a low stress environment, which is defined as having only occasional changes in work setting and requiring no more than occasional decision-making" (R. 699). (*See* ECF No. 10 at 19, "The DOT and O*NET confirm what common sense suggests – monitoring and serving a school bus full of children is not simple, routine, repetitive work in a low stress environment.")

---

[4] https://occupationalinfo.org/37/372667042.html.

Notwithstanding the rescission of SSR 04-p, the Court considers whether the VE's testimony was inconsistent with the DOT because the VE here expressly relied on the DOT as a source. However, there are two significant problems with Plaintiff's argument. First, Plaintiff's interpretation of the DOT's job description as inconsistent with his assessed limitations is not linked to any metric used in the DOT. The DOT assigns the "School Bus Monitor" position an SVP level of 2. *See* DOT 372.667-042. Courts generally deem unskilled jobs with an SVP level of 2 as consistent with an RFC limitation to "simple, routine, repetitive tasks". *See, e.g., Tina S. v. Dudek,* No. 23-cv-3603 (TNL), 2025 WL 872363, at *5 (D. Minn. Mar. 20, 2025) ("[L]evel two reasoning's requirement that an individual can '[d]eal with problems involving a few concrete variables in or from standardized situations' corresponds to the residual functional capacity's limitation of 'simple, routine, and repetitive tasks.'"); *Austin C. v. Kijakazi*, No. 22-CV-4036 (KEM), 2023 WL 7130621, at *10 (N.D. Iowa Oct. 30, 2023) (defining "simple, repetitive, routine tasks" as "SVP 1 or 2 jobs"); *Hamer v. Colvin*, No. 4:14 CV 1371 JMB, 2015 WL 6750820, at *10 (E.D. Mo. Nov. 5, 2015) (finding no inconsistency between representative jobs with an SVP level of 3 under the DOT and claimant's limitation to "simple, repetitive tasks"). The VE's testimony that a person restricted to "simple, routine, repetitive tasks" can perform the "School Bus Monitor" job thus does not conflict with the DOT.

Moreover, the DOT includes no assessment of whether the School Bus Monitor position or any other occupation involves "nonproduction pace work" or "low stress work." The VE's testimony therefore cannot have conflicted with DOT as to those limitations, because "the DOT could not conflict with areas on which it was silent." *Jacqueline M. J. v. O'Malley*, No. 23-cv-1154 (DLM), 2024 WL 4234964, at *11 (D. Minn. Sept. 19, 2024) (finding no conflict between DOT and VE testimony related to pace and stress levels because DOT offers no guidance on

those restrictions). For these reasons, the Court concludes the VE's testimony did not conflict with the DOT.

Plaintiff's argument therefore must rest, if at all, on his appeal to "common sense". (*See* ECF No. 10 at 19.) The Court does not exclude the possibility that, in an extreme case, a VE's testimony might run so far afield of common sense that to adopt it establishes reversible error even in the absence of any clear conflict with the authorities he cites to support his conclusions.[5] This is not such an extreme case, however. It is plausible that, as understood pursuant to the VE's considerable experience and expertise, the job of School Bus Monitor as generally performed is a low stress job. The ALJ reliance on the VE's testimony under these circumstances was not so unreasonable as to constitute reversible error.

Second, as the ALJ's Decision points out, Plaintiff's attorney "had a full and fair opportunity to post relevant questions or challenges to the vocational expert's testimony during the hearing." (R. 710.) Plaintiff's counsel asked the VE a series of questions about: reaching, handling and fingering on the left side; repetitive use on the left side; flexion of the neck; and the VE's source of information for his estimated job numbers. (*See* R. 801-02.) But he posed no questions to the VE about whether the School Bus Monitor position was consistent with a limitation to "simple, routine repetitive tasks at a nonproduction pace in a low stress environment." (*Id.*) Because he did not ask the VE about these restrictions, the VE did not have an opportunity to respond to the concerns he now raises. He therefore failed to satisfy the expectation of a claimant's attorney to "raise any relevant questions or challenges about the VE's testimony at the time of the hearing and to assist in developing the record through appropriate

---

[5] For example, if a hypothetical ALJ were to adopt testimony from a VE that a blind claimant could work as a truck driver, remand no doubt would be warranted even if it did not clearly conflict with the authorities cited.

questions to the VE." SSR 24-3p. Though SSR 24-3p is not binding on the Court, it is entitled to deference. *See, e.g., Baker v. Colvin*, No. 8:14CV13, 2014 WL 3644656, at *18 (D. Neb. July 22, 2014), *aff'd*, 620 F. App'x 550 (8th Cir. 2015) (while Social Security Administration Rulings are binding on "all components of the Administration" they are not binding or conclusive on the courts). The absence of information in the administrative record to support Plaintiff's contention that the School Bus Monitor position cannot be performed with his RFC limitations, when Plaintiff had a full and fair opportunity to create such a record, weighs against remand.

The record reflects that the ALJ appropriately questioned the VE about: the sources supporting his testimony; whether any of those sources define exertion, education, or skill level differently than Social Security regulations; whether any of the occupations the VE identified are performed in a more modern way than described in the DOT; and whether the VE cited to any data sources that do not precisely correlate to each other. (R. 800-01.) These questions satisfied the ALJ's obligation to develop the record as required under the Administration ruling. *See* SSR 24-3p. For all these reasons, the Court finds the ALJ's determination that the School Bus Monitor occupation was consistent with Plaintiff's limitations was not legally erroneous.

**C. Number of Jobs in the National Economy**

Finally, having determined that the ALJ did not err in adopting the VE's testimony as to the nature of the representative jobs Plaintiff can perform, the Court also upholds the ALJ's determination that those jobs represent a significant number of jobs available in the national economy.

Based on the VE's testimony, the representative jobs he identified—School Bus Monitor (22,800 jobs), Usher (5,000 jobs), and Children's Attendant (4,000 jobs)—total approximately 31,800 jobs in the national economy. The Court finds 31,800 is a sufficient number of jobs to

support the ALJ's conclusion that Plaintiff is not disabled. *See Shari B. v. Kijakazi*, No. 22-cv-1539 (DJF), 2023 WL 6130679, at *8 (D. Minn. Sept. 19, 2023) (collecting cases and finding 20,000 jobs significant).

However, Plaintiff contends the ALJ should have discounted the VE's estimate of the number of School Bus Monitor positions available. Plaintiff specifically argues the VE overinflated the number of such jobs available by testifying to the total number of such jobs without considering Plaintiff's particular limitations. (ECF No. 10 at 20, "[T]his number merely represents all such jobs, not those which can be performed by someone with [Plaintiff's] RFC.") Plaintiff cites the Occupational Requirements Survey ("ORS") on School Bus Monitors (ECF No. 10-1) to support this contention. The ORS provides detailed survey results regarding the physical demands, environmental conditions, education, training, experience, and cognitive and mental requirements necessary for surveyed positions. (*Id.*) As Plaintiff points out, the ORS for the School Bus Monitor position indicates that 25-35% of survey respondents reported lifting greater than 25 pounds as a job requirement, which is inconsistent with a light RFC, and only 10% of respondents reported that this position had a consistent, generally slow work pace. (*See* ECF No. 10 at 20-21; ECF No. 10-1.) Based on this data, Plaintiff concludes the VE must have overestimated the number of School Bus Monitor positions available to a person with his RFC.

These arguments are not compelling. The ORS data Plaintiff cites does not contain estimates of the number of School Bus Monitor jobs available in the national economy; rather, it only describes the demands of the position as reported by survey respondents. (*See* ECF No. 10-1.) Clearly, because this resource does not contain job estimates, the ORS cannot alone constitute evidence regarding the number of jobs available. Because the VE testified that he relied on estimates from Job Browser Pro (R. 800), Plaintiff suggests that to obtain an accurate estimate of

jobs available to a person with Plaintiff's RFC using the ORS, the VE should have started with the estimate from Job Browser Pro and then subtracted percentages from that estimate based on the ORS responses. (ECF No. 10 at 20.) But this argument requires an unfounded inferential leap: that the numbers reported in Job Browser Pro are based on the same set of respondents, with the same job duties, as those reported in the ORS. There is no support in the record for Plaintiff's blind assumption that these two entirely separate databases are based on the same pool of individuals.

The only reasonable way to determine how these two separate resources should be interpreted together would be to obtain an opinion from an expert in the field. Plaintiff had access to an expert but did not obtain such an opinion. Though the VE testified about job numbers at the administrative hearing, the ORS data Plaintiff cites is not part of the record of that hearing, and Plaintiff did not question the VE about the survey responses on which he relies. (*See* R. 801-02.) Thus, there is no evidence in the record to support Plaintiff's interpretation of the data. The only reliable evidence in the record regarding the number of available jobs is the VE's testimony. Based on that testimony, the ALJ concluded there were jobs existing in significant numbers in the national economy that Plaintiff could perform, such that Plaintiff was not disabled. (R 709.) Because the ALJ's conclusions were supported by substantial evidence in the record as a whole, the Decision was not erroneous and remand is unwarranted.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff's Request for Relief (ECF No. 10) is **DENIED**;

2. The Commissioner's Request for Relief (ECF No. 17) is **GRANTED**; and

3. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 10, 2026

*s/ Dulce J. Foster*
Dulce J. Foster
United States Magistrate Judge